DECISION
{¶ 1} Relator, Jerry Tressler, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability compensation, and order the commission to find that he is entitled to that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed an objection to the magistrate's decision, stating only that he objects because the magistrate disagreed with the arguments he presented. The magistrate considered relator's arguments and concluded that the commission properly relied on a vocational assessment prepared by Anthony Stead, and that the commission gave appropriate consideration to a letter from Catherine Mikula concerning relator's willingness to pursue vocational rehabilitation. We agree with the magistrate's analysis and reasoning. We do, however, wish to correct the spelling of relator's name for the record.
 {¶ 3} Based on an independent review of the evidence, and with the exception of the change to the spelling of relator's name, we adopt the magistrate's decision, including the findings of fact and conclusions of law contained it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objection overruled, writ of mandamus denied.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jerry [Tressler], : Relator, :
v. : No. 05AP-654
Industrial Commission of Ohio : (REGULAR CALENDAR) and Koester Metals, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 21, 2005 Law Offices of Thomas Tootle Co., L.P.A., and ThomasTootle, for relator.
Jim Petro, Attorney General, and Eric J. Tarbox, for respondent Industrial Commission of Ohio.
Eastman Smith, LTD, Thomas J. Gibney and Sarah E.Pawlicki, for respondent Koester Metals, Inc.
 IN MANDAMUS {¶ 4} Relator, Jerry [Tressler], has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 5} 1. Relator has sustained three separate work-related injuries during the course of his employment and his claims have been allowed for:
Claim Number 99-342285: Recurrent unilateral inguinal hernia, right; other mononeuritis lower, right represents the diagnosis of right ilioinguinal nerve entrapment syndrome; erectile dysfunction; depressive disorder, NEC.
Claim Number 97-348700: Contusion of elbow, left.
Claim Number 99-543673: Contusion of thigh, left.
 {¶ 1} 2. On March 8, 2002, relator filed his application for PTD compensation. In support thereof, relator attached the February 27, 2002 report of Timothy H. Hogan, M.D., who noted that relator's activities of daily living, such as lifting, prolonged standing, even sitting, kneeling, squatting, reaching, climbing, and bending, are moderately to severely hampered by his pain. Dr. Hogan opined that relator was unable to engage in any sustained remunerative employment and that he was permanently and totally disabled.
 {¶ 2} 3. Relator was also examined by Thomas E. Lieser, M.D., who issued a report dated May 14, 2002. Dr. Lieser opined that relator was not precluded from participating in a work setting. He indicated that relator could pursue remunerative employment on a full-time basis provided he avoid squatting, stooping or climbing. Dr. Lieser suggested that relator avoid very heavy or heavy work and limit himself to medium level functioning. As such, he opined that relator was capable of lifting 30 pounds regularly and up to 40 pounds occasionally.
 {¶ 3} 4. Relator was also examined by Daniel J. Kuna, Ph.D., who issued a report dated June 4, 2002. Dr. Kuna examined relator for his allowed psychological condition and assessed a three percent whole person impairment; opined that relator's "depressive disorder" was very mild and should resolve by August or September without treatment; that relator is not in need of continuing psychotherapy; and that relator's "depressive disorder" is not work-prohibitive.
 {¶ 4} 5. Relator was also examined by commission specialist, Gerald A. Cichocki, M.D., who issued a report dated June 20, 2002. Dr. Cichocki opined that relator's allowed condition of "erectile dysfunction" had reached maximum medical improvement ("MMI") and assessed a ten percent whole person impairment.
 {¶ 5} 6. Relator was also examined by Harvey A. Popovich, M.D., who issued a report dated July 17, 2002. Dr. Popovich opined that relator's allowed physical conditions had reached MMI, assessed a one percent whole person impairment, and concluded that relator was capable of performing sustained remunerative work activity of a sedentary nature.
 {¶ 6} 7. Relator was also examined by Donald J. Tosi, Ph.D., for his allowed psychological conditions. In his July 25, 2002 report, Dr. Tosi opined that: relator's allowed psychological conditions had reached MMI; assessed an eight percent whole person impairment; and opined that relator was able to return to his former position of employment or other employment for which he was otherwise qualified.
 {¶ 7} 8. A vocational assessment was prepared by Anthony Stead, MS, CRC, CCM, dated October 4, 2002. Mr. Stead completed a "Transferable Skills Analysis" in an attempt to identify positions for which relator would possess transferable and/or related employment skills. Based upon that analysis, Mr. Stead opined that relator could perform the following jobs: "Surveillance Systems Monitor; Security Guard; Self-Service Station, Clerk/Cashier; Bench Worker; and Assembler." Mr. Stead opined that relator's age of 43 placed him within the category of a younger person and that relator should retain the ability to learn new skills and adapt to new environments. Mr. Stead opined that relator's educational level should be sufficient for entry-level, unskilled, and semi-skilled tasks and that his work history would not be a barrier to reemployment.
 {¶ 8} 9. Another vocational assessment was prepared by John P. Kilcher, CRC, CCM, CDMS, LPC, NCC, dated October 9, 2002. Mr. Kilcher opined that relator's chronic groin pain would severely limit his ability to work and that relator's depression would further impede his ability to work. Mr. Kilcher opined that relator's education would not have provided him with skills that would allow him to obtain a job within his reduced residual functional capacity and would prevent him from developing new skills. Mr. Kilcher ultimately opined that the combination of relator's orthopedic and psychological impairments preclude him from performing any type of sustained remunerative employment on a full-time or part-time basis.
 {¶ 9} 10. Another vocational assessment was prepared by Tracy H. Young, MA, CRC, CCCP. In a report dated October 8, 2002, Ms. Young noted that relator's level of academic functioning would limit him to entry-level positions and that he lacked any transferable skills. Ms. Young also noted that, although relator had completed the 11th grade in a Joint Vocational School, he cannot read or write. Ms. Young considered relator's IQ to be below average and that he would have difficulty learning new academic or other skills required to perform entry-level sedentary jobs.
 {¶ 10} 11. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on March 3, 2003. The SHO relied upon the medical reports of Drs. Popovich and Tosi and concluded that, from a physical standpoint, relator was limited to performing sedentary work and that, from a psychological standpoint, relator had no impairment. The SHO also relied upon the vocational report of Mr. Stead as follows:
On October 4, 2002, a report was prepared by Anthony Stead, vocational expert, regarding the injured worker's capacity for employment, considering not only his functional capacity, but also his age, education, and work experience. Mr. Stead noted that the injured worker is only 43 years old. He completed the 11th grade but never obtained a GED degree. Mr. Stead assumed from a functional perspective that the injured worker would be limited to sedentary work. Mr. Stead opined numerous jobs that the injured worker would be capable of performing within his functional capacity. Mr. Stead noted that the injured worker is only 43 years old, and this is not a barrier to re-employment. At his age, he should retain the ability to learn skills and adapt to new environments. Mr. Stead offered several different jobs that the injured worker would be capable of performing, such as a surveillance systems monitor, a security guard, a worker at a self-service station, a clerk cashier, a bench worker, and an assembler. This Staff Hearing Officer finds the vocational analysis and conclusion of Mr. Stead to be persuasive.
 {¶ 16} In the alternative, the SHO denied relator's application due to his failure to seek rehabilitation:
This Staff Hearing Officer acknowledges that the vocational rehabilitation file for the injured worker was closed on January 29, 2001. Admittedly, the injured worker cannot read nor write and may very well have limited options for returning to work. However, it is clearly noted in the vocational rehabilitation closure report that the injured worker did not wish to participate in vocational services. The injured worker requested that his case be closed. This Staff Hearing Officer finds no evidence in file that the injured worker has ever actually pursued and participated actively in a rehabilitation program. In fact, information submitted by the employer, by letter dated June 3, 2002, from Catherine Mikula reveals that the injured worker did not avail himself of an opportunity to improve his reading skills. Ms. Mikula was the program director for the Northwest Ohio private industry council. She attempted to help the injured worker who was deemed to be illiterate by the instant employer. Ms. Mikula volunteered to tutor the injured worker once or twice a week. The injured worker initially kept the appointments and was making progress in developing his reading skills. However, after at time, he failed to show up for appointments and eventually cancelled the tutoring program. This information reveals that the injured worker has not exhibited a desire to rehabilitate himself to reenter the workforce for jobs within his functional capacity. Further, at age 43, the injured worker has nearly 20 years of potential work life available for him. The evidence fails to establish that the injured worker has made a good-faith attempt to rehabilitate himself from a vocational standpoint.
 {¶ 17} 12. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 11} Conclusions of Law:
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165
 {¶ 19} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 20} Relator challenges the commission's order in two respects: (1) the commission abused its discretion when it concluded that relator had the ability to learn new skills; and (2) the commission abused its discretion when it relied upon evidence that predated relator's application to conclude that relator lacked motivation to participate in rehabilitation. For the reasons that follow, the magistrate finds that relator has not demonstrated that he is entitled to a writ of mandamus.
 {¶ 21} In his first argument, relator contends that the commission's reliance upon Mr. Stead's conclusion that he has the ability to learn new skills and adapt to new environments is not supported by the record. In support of that argument, relator points to the other vocational reports. Both Ms. Young and Mr. Kilcher had opined that relator's intellectual abilities would make it difficult for him to learn new academic and other skills required to perform entry-level sedentary work. However, Mr. Stead disagreed and noted that relator should be able to learn new skills and adapt to a new work environment and identified certain jobs relator could perform. Further, Mr. Stead did note that relator indicated he was dyslexic.
 {¶ 22} Relator appears to argue that the commission was required to find that his difficulties reading and writing preclude him from performing any work in the future because he is incapable of learning new skills. However, as stated numerous times, the commission has the discretion to accept one vocational report while rejecting another and the commission is not required to explain its reasons therefore. See State ex rel. Jackson v.Indus. Comm. (1997), 79 Ohio St.3d 266. Furthermore, to bind the commission to a rehabilitation report's conclusions would make the rehabilitation division, and not the commission, the ultimate evaluator of disability contrary to Stephenson. The commission was within its discretion to find that, at age 43, and given his educational achievements, relator could learn new skills and adjust to new work environments. This determination did not constitute an abuse of discretion.
 {¶ 23} Relator also challenges the commission's order from the standpoint that the commission relied upon the June 3, 2002 letter from Catherine Mikula indicating that relator did not avail himself of an opportunity to improve his reading skills. Relator points out that he had participated in this reading program in 1993, six years prior to the industrial injury which led to the most significant allowed conditions. However, the magistrate disagrees with relator's characterization of the amount of weight the commission gave to Ms. Mikula's letter.
 {¶ 24} The SHO noted that relator's vocational rehabilitation file was closed January 29, 2001, at the request of relator. Apparently, relator did not wish to pursue vocational rehabilitation at that time because of pain and he was going to apply for social security benefits instead. There is no evidence that, once his level of pain decreased/lessened, he ever sought rehabilitation or retraining again. The commission felt that, at age 43, and given his ability to learn new skills, relator should pursue rehabilitation. The commission can hold a claimant accountable for their failure to take advantage of opportunities for rehabilitation or retraining. State ex rel. Bowling v. Natl.Can Corp. (1996), 77 Ohio St.3d 148. The commission also pointed to Ms. Mikula's letter as further evidence that relator has not exhibited a desire to rehabilitate himself in an effort to reenter the workforce. If Ms. Mikula's report would have been the only evidence upon which the commission had relied in finding that relator failed to avail himself of rehabilitation and if that would have been the sole reason for denying his application for PTD compensation, this magistrate would agree that a writ of mandamus was appropriate because the time period addressed by Ms. Mikula predated the industrial injury. However, because the commission first found that relator was capable of performing certain specific jobs of a sedentary nature, the commission did not abuse its discretion by citing an alternative reason for denying his application for PTD compensation and in citing to Ms. Mikula's 2002 letter as further evidence of relator's lack of willingness to participate in rehabilitation. Even if this court was to find that the commission's analysis regarding relator's failure to participate in rehabilitation constituted an abuse of discretion, a writ of mandamus still would not be appropriate as the commission found that relator had the ability to perform some sustained remunerative employment.
 {¶ 25} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and relator's request for a writ of mandamus should be denied.